**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-02177-REB-BNB

CODY L. POTTS,

    Plaintiff,

v.

CITIFINANCIAL, INC., and
PACIFICARE OF COLORADO, INC., jointly and severally,

    Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**Blackburn, J.**

The matter before me is **Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#12][1] filed August 26, 2011. Because I find that defendants have failed to adequately demonstrate the existence of a plan subject to ERISA, I deny the motion without prejudice.

## I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Although styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), defendants' motion, which raises the question of federal preemption, actually implicates the court's subject matter jurisdiction. *See Gennesse County Employees Retirement System v. Thornburg Mortgage Securities Trust 2006-3*, – F.Supp.2d –, 2011 WL

---

[1] "[#12]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

5840482 at *42 (D.N.M. Nov. 12, 2011); **Begay v. Public Service Co. of New Mexico**, 710 F.Supp.2d 1161, 1193 (D.N.M. 2010). **See also Nauert v. Ace Properties and Causalty Insurance Co.**, 2005 WL 2085544 at *5 (D. Colo. Aug. 27, 2005). Although many circuits have addressed the issue, the Tenth Circuit has not specifically considered whether the existence of an ERISA plan presents a jurisdictional or substantive issue. Because defendants' motion relies on substantive issues that would be the same regardless whether the motion were considered under Rule 12(b)(6) or Rule 12(b)(1), and because those issues are intertwined inextricably with the merits of the case, I will consider the motion under Rule 12(b)(6). **See Herring v. Oak Park Bank**, 1996 WL 377088 at *2 (D. Kan. June 24, 1996) (citing **Holt v. United States**, 46 F.3d 1000, 1003 (10th Cir. 1995)).

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" **Kansas Penn Gaming, LLC v. Collins**, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting **Conley v. Gibson**, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of **Twombly**, I now review the complaint to determine whether it "'contains enough facts to state a

claim to relief that is plausible on its face.'" **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting **Twombly**, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." **Kansas Penn Gaming**, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted). Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949. **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965). The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City and County of Denver**, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting **Twombly**, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

On January 13, 2008, plaintiff was hospitalized for treatment of acute diabetic ketoacidosis. At the time plaintiff believed he had medical insurance provided by defendant PacifiCare of Colorado, Inc. ("PacifiCare"), through his employer, defendant CitiFinancial, Inc. ("CitiFinancial").[2] Nevertheless, plaintiff alleges he "was informed that his medical coverage . . . had been denied," and that PacifiCare paid only a portion of

---

[2] Defendants contend that the insurance plan actually was sponsored by CitiGroup, Inc.

his medical bills. Ultimately, plaintiff was unable to pay his outstanding medical bills, and collection proceedings were instituted against him. He claims further that after leaving his position with CitiFinancial in February, 2008, he has been unable to secure health insurance and has incurred further out-of-pocket expenses related to the treatment of his health conditions as a result.

Plaintiff filed this action in Colorado state district court alleging claims for breach of contract, bad faith breach of insurance contract, breach of fiduciary duty, and conversion. Defendants removed to this court, asserting that all plaintiff's claims were to recover benefits allegedly due under an insurance plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), and, therefore, completely preempted and cognizable only under federal law. Plaintiff did not move to remand.[3] Nevertheless, he challenges defendants' contentions that an ERISA plan exists and that his state law claims are preempted. Because I find the first issue

---

[3] This creates somewhat of a quandary for the court if complete preemption is not, in fact, warranted. Although section 514(a) of ERISA, which provides for preemption of any state law claim that "relate[s] to any employee benefit plan," 29 U.S.C. § 1144(a), is interpreted broadly, *see Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), it merely creates ordinary or "conflict" preemption, which is merely a defense and will not support removal jurisdiction, *see Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1157 (10th Cir. 2004), *cert. denied*, 125 S.Ct. 2961 (2005). Complete preemption sufficient to create federal removal jurisdiction applies only to that more limited class of claims that fall within the scope of the civil enforcement provisions of section 502(a) of ERISA, which covers claims "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, claims that relate to a plan, but that do not seek to enforce rights under that plan are not subject to removal. **See Felix**, 387 F.3d at 1157.

Defendants here present arguments implicating both types of preemption. However, if it should appear that only conflict preemption is implicated in this case, the court would be required to consider remanding *sua sponte*, as no other basis of federal subject matter jurisdiction is alleged. **See** 28 U.S.C. § 1447(c); **Velarde v. Velarde**, 2009 WL 2426232 at *4-*5 (D.N.M. June 29, 2009).

dispositive, I do not address the remainder.[4]

ERISA creates a "uniform regulatory regime over employee benefit plans" in order to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" **Aetna Health Inc. v. Davila**, 542 U.S. 200, 208, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004) (quoting 29 U.S.C. § 1001(b)).  For this reason, it has long been recognized as one of the few federal statutes as to which complete preemption may be appropriate.  *See* **Metropolitan Life Insurance Co. v. Taylor**, 481 U.S. 58, 63-67, 107 S.Ct. 1542, 1546-48, 95 L.Ed.2d 55 (1987); *see also* **Colbert v. Union Pacific Railroad Co.**, 485 F.Supp.2d 1236, 1240 (D. Kan 2007) (complete preemption recognized also under Labor Management Relations Act and National Bank Act). Complete preemption preserves ERISA's "interlocking, interrelated, and interdependent remedial scheme," **Massachusetts Mutual Life Insurance Co. v. Russell**, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), which reflects congressional policy choices "represent[ing] a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," **Pilot Life Insurance Co. v. Dedeaux**, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 S.Ct. 39 (1987).

Before determining whether ERISA preempts a plaintiff's state law claims in a particular action, however, the court first must find that the employee benefit plan in

---

[4] However, I do note my disinclination to accept plaintiff's argument that, should the court find his claims preempted, it may simply recharacterize them as arising under ERISA. I am neither required nor inclined to draft pleadings for parties and their learned counsel. Should the existence of an ERISA plan be proven, and should plaintiff's claims be found to be preempted, dismissal of the state law claims would be required, albeit with leave to amend the complaint appropriately.

question is one governed by ERISA. An "employee welfare benefit plan" under ERISA is any plan, fund, or program maintained by an employer for the purpose of providing participants with, *inter alia*, medical care benefits. 29 U.S.C. § 1002(1). **See also Gaylor v. John Hancock Mutual Life Insurance Co.**, 112 F.3d 460, 464 (10th Cir. 1997) (noting that definition "can be broken down into five elements: (1) a plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries") (internal quotation marks omitted). A 'plan, fund, or program' exists if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." **Peckham v. Gem State Mutual of Omaha**, 964 F.2d 1043, 1047 (10th Cir. 1992) (citation and internal quotation marks omitted). The statute applies to any such plan that is established or maintained by an employer engaged in commerce or any industry affecting commerce. 29 U.S.C. § 1003(a)(1).

Plaintiff claims he has no knowledge whether an ERISA-qualified plan exists in this case, and neither party has seen fit to provide the court with a copy of any extant document, although consideration of such would have been appropriate in this instance. **GFF Corp. v. Associated Wholesale Grocers**, 130 F.3d 1381, 1384-85 (10th Cir. 1997); **O'Hayre v. Board of Education for Jefferson County School District R-1**, 109 F.Supp.2d 1284, 1288 (D. Colo. 2000). Instead, defendants rely solely on the allegations of plaintiff's amended complaint to show the existence of an ERISA plan. Although it would be tempting to accept their invitation to infer more therefrom,

ultimately I find myself unable to do so.  Thus, defendants' motion will be denied, albeit without prejudice.

Plaintiff alleges plainly that "CitiFinancial, Inc. provided health insurance to its employees, including [plaintiff], through PacifiCare," and "withheld monthly premiums from its employees' paychecks" as a condition of coverage.  In addition, plaintiff maintains that such deductions were made from his paycheck from December, 2007, through February, 2008.  (*See* **Am. Compl.** ¶¶ 8-10, 16 at 2 [#3], filed August 19, 2011.)  It is reasonable to infer from these allegations that a plan existed and that employees of CitiFinancial, such as plaintiff at the time, were the intended beneficiaries of that putative plan.  Nevertheless, "[j]ust because a plan exists . . . does not mean that it is an ERISA plan. . . . An employer's mere purchase of insurance for its employees does not, without more, constitute an ERISA plan."  **Gaylor v. John Hancock Mutual Life Insurance Co.**, 112 F.3d 460, 464 (10th Cir. 1997).  I do not find the allegations of the complaint sufficient *per se* to demonstrate the existence of a plan that meets the remaining **Gaylor** criteria.

I do not agree with defendants, for example, that the allegation that CitiFinancial withheld premiums on a monthly basis reasonably suggests that its "purchase of the policy is an expressed intention . . . to provide benefits on a regular and long-term basis."  *Id.*  It is too much of a stretch to infer the ongoing nature of such benefits when the amended complaint suggests no more than that premiums were withheld from plaintiff's wages for only three consecutive months.  **See Fort Hallifax Packing Co. v. Coyne**, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) (in order to fit within

ERISA, the plan must implicate benefits "whose provision by nature requires an ongoing administrative program to meet the employer's obligation").

Nor are the allegations of the complaint sufficient standing alone to establish the procedures for receiving benefits. Defendants clearly have conflated this element with that addressing the source of financing. (*See* Def. Motion at 6 (arguing that "the procedure for receiving benefits was CitiFinancial's withholding of monthly health insurance premiums from its employees' paychecks").) Nothing in the complaint suggests how employees were to claim and receive their medical benefits. Here again, had defendants seen fit to provide the court with a copy of the actual plan documents, this element might easily have been proven or disproven. *Cf. Gaylor*, 112 F.3d at 464 (noting that "the procedures for receiving benefits are detailed in the informational booklets provided to . . . employees"); *Tucker v. Continental Assurance Co.*, 2006 WL 406591 at *2 (N.D. Okla. Feb. 17, 2006) (finding this element established where defendant submitted benefits information documents as exhibits to motion to dismiss); *Brooks v. Guardian Life Insurance Co. of America*, 995 F.Supp. 1171, 1173 (D. Kan. 1998) (procedures for receiving benefits outlined in literature disseminated to employees). Because such documentation is not part of the record before me, however, I cannot reasonably infer what, if any, procedures existed with respect to the alleged plan in this case.

For these reasons, I find and conclude that defendants have failed to show the existence of an ERISA plan. Accordingly, their motion to dismiss will be denied, albeit

without prejudice to refile.[5]

**THEREFORE, IT IS ORDERED** that **Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#12] filed August 26, 2011, is **DENIED WITHOUT PREJUDICE**

Dated December 2, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[5] In this regard, I direct the parties' attention to REB Civil Practice Standard IV.B.1, effective December 1, 2011.